## UNITED STATES OF AMERICA

### v.

## PATRICK COGGINS, Appellant

[986 F.2d 651]

No. 92-7228

United States Court of Appeals

for the Third Circuit

March 1, 1993

JAMES M. PETERS, ESQ. (Argued), Office of the United States Attorney, Christiansted, St. Croix, V.I., *for appellee*

MELODY M. WALCOTT, ESQ. (Argued), Office of Federal Public Defender, Christiansted, Saint Croix, V.I., *for appellant*

BEFORE: BECKER, COWEN and ROTH, *Circuit Judges*

## OPINION OF THE COURT

ROTH, *Circuit Judge*

On April 24, 1992, Patrick Coggins was sentenced to 121 months imprisonment for possession of crack cocaine with intent to distribute and for attempted possession of a controlled substance on board an aircraft. Coggins was arrested at the St. Croix airport after fleeing from a DEA agent who had briefly detained Coggins and his four travelling companions for questioning. The trial court denied Coggins' motion to suppress evidence of the crack cocaine that he abandoned while in flight from the DEA agent, and a jury found him guilty of both charges. Coggins appeals his conviction on the grounds that the DEA agent's investigative detention was an unlawful seizure and that the trial court erred in denying his motion to suppress.

While we disagree with the district court's holding that there was no seizure, we will affirm the district court's finding that Agent Inouye had "reasonable suspicion," or sufficient evidence to support an investigative detention of Coggins. Thus, we will affirm his conviction.

### I.

On March 26, 1991, Patrick Coggins and three other males boarded a small commercial plane for the brief flight from St. Thomas to St. Croix in the U.S. Virgin Islands. Also on board that flight was Agent Mark Inouye of the Drug Enforcement Administration (DEA), travelling on business, who recognized one of the four men as being involved in drug trafficking. Agent Inouye noted that the four men were wearing shorts and T-shirts and wore their hair in dread locks. Sergeant James Miller of the Virgin Islands Police Department met Inouye when he arrived at the St. Croix airport at 3:30 p.m. Miller recognized another of the four men as a known drug dealer. While Inouye and Miller were watching them, the four men rented a car and sped off. Inouye and Miller questioned the car rental agent and learned that the car was due to be returned in just two and one half hours. They decided to intercept the suspects on their return and to question them.

243

The foursome returned at about 6:00 p.m. and asked an unidentified man at the airport about the departure time of the Pan Am flight to St. Thomas. The men then drove off again. At roughly 8:30 that night, the car returned with five men in it. As the men sat together in a stairwell at the airport waiting for their flight, Inouye approached them, identified himself as a DEA agent, and asked to see their identification and plane tickets. Agent Inouye was still accompanied by Sergeant Miller of the Virgin Islands Police, who was also in plainclothes. Coggins indicated he had no identification and that the fifth man, Edward Emmanuel, held all their plane tickets. Agent Inouye examined the airline tickets that Emmanuel was holding, noticed that they were all issued with the last name of "Smith" and paid for in cash, and began to question Emmanuel.

While Agent Inouye was questioning Emmanuel, Coggins stood up and stated that he needed to go the bathroom. Inouye told him to wait, and Coggins sat back down. Shortly after that, Coggins again stood up and, appearing very agitated, said he had to go to the bathroom immediately. Inouye insisted that Coggins had to sit down and wait until Inouye was through with the interview. Coggins then walked off, breaking into a run. Inouye yelled at Coggins to stop and chased him outside the airport. While running, Coggins pulled several small plastic bags from his pockets and threw them into the bushes outside the airport. Inouye caught up with Coggins and arrested him after a scuffle. Sergeant Miller retrieved the plastic bags. Later police investigation revealed that the bags contained crack cocaine.

## II.

■ ■ The jurisdiction of the district court rested on V.I. Code tit. 4, § 32 (1990). This Court's jurisdiction rests on 28 U.S.C. § 1291. The central issue of this appeal is whether Coggins was unlawfully seized by Agent Inouye. If Coggins was unlawfully seized, the district court should have suppressed the evidence of the crack cocaine that Coggins discarded while fleeing with Inouye in hot pursuit. Under the "fruit of the poisonous tree" doctrine first enunciated in Wong Sun v. United States, 371 U.S. 471 (1963), evidence gathered as a result of an unlawful search or seizure must be suppressed at trial. As both parties concede, when the abandonment of property is precipitated by an unlawful seizure, that property also

must be excluded. See, e.g., Fletcher v. Wainwright, 399 F.2d 62, 64 (5th Cir. 1968).

■■ Appellant argues that Coggins was seized at the point during Agent Inouye's questioning when Coggins requested to leave, was told not to, and initially obeyed. The Supreme Court has held that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). More recently, the Court has held that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave . . . ." United States v. Mendenhall, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.) (footnote omitted); accord INS v. Delgado, 466 U.S. 210, 215 (1984) (adopting Mendenhall test).

The Supreme Court has ruled that a reasonable person under circumstances of a somewhat similar airport investigatory stop would not believe he was free to leave while being questioned by a police officer who had possession of that person's identification and airplane tickets. In Florida v. Royer, 460 U.S. 491 (1983), the Court considered whether a suspected drug courier was seized during questioning by narcotics officers that led to a search of his luggage and his eventual arrest. In Royer, the Court held that:

> Asking for and examining Royer's ticket and his driver's license were no doubt permissible in themselves, but when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, Royer was effectively seized for the purposes of the Fourth Amendment. These circumstances certainly amount to a show of official authority such that "a reasonable person would have believed that he was not free to leave."

460 U.S. at 501-02 (citing United States v. Mendenhall, 446 U.S. at 554 (opinion of Stewart, J.) (footnote omitted)). Analogously, under the circumstances of this case, Coggins might not have believed that he was free to leave. He demonstrated such a belief by initially obeying Agent Inouye's order to stay.

245

The appellee argues that this case is factually similar to and governed by California v. Hodari D.,— U.S. —, 111 S. Ct. 1547 (1991), a position apparently adopted by the district court as a partial basis for its ruling on the motion to suppress. Hodari held that the Mendenhall test is a necessary but not sufficient condition for a seizure effected by a "show of authority." 111 S. Ct. at 1551. Under Hodari, while such a seizure requires a show of authority objectively sufficient to convince the reasonable person he is not free to leave, it also requires that the suspect actually submit to the show of authority. 111 S. Ct. at 1552.

■ In Hodari, a juvenile standing on a street corner fled at the approach of an unmarked police car and was chased on foot through alleys by a police officer wearing a jacket with "Police" embossed on the front and back. While fleeing, Hodari was outmaneuvered and nearly ran into the pursuing officer. Upon seeing the officer, Hodari threw aside a chunk of crack cocaine. He was then tackled and arrested. The California Court of Appeals reversed Hodari's conviction, holding that he had been "seized" when he saw the police officer pursuing him and that the cocaine should have been suppressed since the officer seized him without the requisite "reasonable suspicion." The Supreme Court reversed the appellate court, holding that no seizure occurs where a suspect does not yield to a show of authority by the police.

■ Appellees argue, following Hodari, that Coggins was not seized because he fled from Inouye after being told to stay until the interview was completed. The district court, in ruling on the motion to suppress, adopted this argument and found that no arrest or seizure took place. We disagree. The facts clearly show that Coggins initially yielded to Agent Inouye's authority by sitting back down. In Hodari, the fleeing suspect never yielded to police authority until he was physically tackled by the police officer. Here, Coggins made a clear request to leave while under questioning by an officer. Coggins was ordered to remain and complied by sitting back down in the stairwell with his companions. Even though he fled soon thereafter, the combination of Coggins' expressed desire to leave, Agent Inouye's order that he stay, and Coggins' yielding to police authority resulted in a seizure for purposes of the Fourth Amendment.

246

## III.

 The remaining question for this appeal is whether Inouye's seizure of Coggins was unlawful and thus should have resulted in the suppression of evidence against him. Typically, a police officer must have probable cause to arrest a suspect. See Terry v. Ohio, 392 U.S. at 20. However, a police officer may stop and briefly detain a person for questioning if he has a "reasonable suspicion," based on articulable facts, that that person has committed, or is in the process of committing, a criminal act. Id. at 30; United States v. Sokolow, 490 U.S. 1 (1989). The presence of a reasonable suspicion must be reviewed in light of the "totality of the circumstances" confronting an officer. United States v. Cortez, 449 U.S. 411, 418 (1981). Initially, Inouye needed neither probable cause nor a reasonable suspicion of criminal activity to approach Coggins and his companions in a public place and ask if they would voluntarily respond to preliminary investigative questions. Police officers do not violate the Fourth Amendment merely by approaching an individual in a public place and asking if he is willing to answer questions. Dunaway v. New York, 442 U.S. 200, 210 n.12 (1979). Thus, the key issue is whether Inouye's suspicion that Coggins was involved in drug trafficking ripened into an adequately supported reasonable suspicion of criminal activity prior to his ordering Coggins not to leave.

 Whether Inouye's seizure of Coggins was supported by a "reasonable suspicion" is a mixed question of law and fact. On review, the trial court's findings of facts are measured by the clearly erroneous test, but our review of the legal component of its conclusion is plenary. United States v. Ezeiruaku, 936 F.2d 136, 139 (3d Cir. 1991). At trial, the prosecution and Agent Inouye repeatedly stated that Inouye had relied on Coggins' match with the "standard profile" for drug couriers: he paid cash for his plane ticket, he carried no luggage and was dressed casually, he stayed only a few hours after his arrival flight, and he used a false name on his ticket. Such drug courier profiles are commonly used to support investigative stops in airports. See Florida v. Royer, 460 U.S. at 494 n.2. The defense challenged the propriety of these factors at

247

trial as ignoring the context of the case.[1] The defense argued, for example, that paying cash for the flight Coggins was about to board could not reasonably be taken as evidence that he was a drug courier. Inouye conceded on cross-examination that the St. Croix to St. Thomas flight cost just $34 and took twenty minutes and that people frequently flew between the two islands for day trips wearing casual clothes and carrying no luggage. Agent Inouye also conceded that defendant's companion, Emmanuel, offered the explanation that they bought their tickets late and were all ticketed under the last name of Smith at the ticket agent's suggestion to expedite their late check-in. This explanation may not have been incredible in light of customary procedures for ticketing these inter-island flights. Thus, apparently plausible explanations existed for several of the factors relied upon by Inouye in formulating his reasonable suspicion which was based on Coggins' match with a drug courier profile.

 However, although the district court held that there had not been a seizure or arrest, it did conclude that a reasonable suspicion of criminal activity in fact existed. In coming to this determination, the court relied on elements in addition to those mentioned above. In ruling from the bench on the motion to suppress, the district court held that several factors "considered as a totality would supply the articular [sic] suspicions that [the defense] said is lacking . . . ." These included the defendant's lack of identification, the use of false names on the plane tickets, the brief duration of the car rental and of the visit to St. Croix, defendant's nervous and highly agitated state, and his companionship with two "recognized individuals involved in illegal activities." Mere association with a known criminal cannot on its own be a basis for a "reasonable suspicion." Ybarra v. Illinois, 444 U.S. 85, 91 (1979). Yet, when such

---

[1] Reliance on drug courier profiles has been sharply challenged when they include constitutionally-relevant factors, such as membership in certain racial groups, or neutral factors arguably unrelated to drug trafficking, such as wearing disheveled clothing or looking "different." See, e.g., United States v. Taylor, 956 F.2d 572, 582 n. 2, 586 n.9 (6th Cir. 1992) (Keith, J., dissenting); Sheri Lyn Johnson, *Race and the Decision to Detain a Suspect*, 93 Yale L.J. 214, 234 (1983). See generally Morgan Cloud, *Search and Seizure by the Numbers: The Drug Courier Profile and Judicial Review of Investigative Formulas*, 65 B.U.L. Rev. 843 (1985).

association is combined with the other elements articulated by Inouye and considered by the district court, a reasonable suspicion adequate to support an investigative detention may indeed arise. We find under the facts of the present case that Agent Inouye did have reasonable cause to detain Coggins.

## IV.

For the foregoing reasons, we conclude as a matter of law that Coggins was seized for the purposes of the Fourth Amendment by Agent Inouye. However, the totality of the evidence establishes that there was sufficient reasonable suspicion to support Coggins' detention. We will, therefore, affirm his conviction.