

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-20-2005

# USA v. Henderson

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4357

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Henderson" (2005). *2005 Decisions.* Paper 1558.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1558

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-4357
_____

UNITED STATES OF AMERICA


v.

ANDREW HENDERSON


Appellant


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 02-cr-00315)
District Judge: Honorable Herbert J. Hutton
_____

Argued October 26, 2004
_____

BEFORE: NYGAARD, AMBRO, and VAN ANTWERPEN, Circuit Judges

(Filed:  January 20, 2005)

Elizabeth T. Hey, Esq. (Argued)
David L. McColgin, Esq.
Catherine C. Henry. Esq.
Federal Court Division
Defender's  Association of Philadelphia
Suite 540 West - Curtis Center
Independence Square West
Philadelphia, PA 19106

Counsel for Appellant

Wendy A. Kelly, Esq. (Argued)
Office of the United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

Counsel for Appellee

_____

OPINION

_____

VAN ANTWERPEN, Circuit Judge

Appellant Andrew Henderson appeals the District Court's denial of his motion to suppress evidence discovered after he was apprehended by police. Henderson maintains that he was illegally seized in violation of the Fourth Amendment when he briefly conversed with, and handed his identification to, a police officer who approached him while investigating an anonymous tip. The parties do not challenge many of the District Court's findings and therefore, this Court is presented with the very narrow question of whether Henderson submitted to the police officer's show of authority. We hold that he did not.

## I. FACTUAL HISTORY

Because we write only for the parties, we recount only the facts most pertinent to our decision.[1] Early on the morning of June 28, 2001, an anonymous caller telephoned the 911 call center in Chester County, Pennsylvania and stated, "You got a guy on Eighth Street with a [sic] orange shirt on -- he has a gun and drugs on him. . . . He is in the

_____

[1] The facts are taken from the District Court's Findings of Fact and Conclusions of Law and Order entered January 10, 2003.

2

middle of the block." The caller did not identify himself and offered no further information, but police dispatchers were able to quickly trace the call to a pay telephone located on Eighth Avenue and East Lincoln Highway in Coatesville, Pa. Officer Steven Smith, a uniformed Coatesville Police Officer was on patrol in a marked police car nearby. At 4:13 a.m., a Chester County police radio dispatcher radioed a description of the suspect to Officer Smith and dispatched him to the area indicated by the caller.

Officer Smith knew the area described by the caller was a high crime area and he responded within two minutes. Upon arrival, he noticed several people milling about on Eighth Street, including the appellant, Henderson, who was the only person wearing an orange shirt. Officer Smith exited his car, approached Henderson and asked for identification, which Henderson provided. Officer Smith then asked Henderson if he could pat him down for weapons.[2] Henderson became evasive, stepped away from the officer and told him that he did not need to be searched. As Officer Smith reached out to touch him, Henderson took several more steps back. As he was doing so Officer James Dilworth arrived at the scene in another marked patrol car. Upon seeing the second officer, Henderson turned and fled. Officer Smith pursued and soon apprehended Henderson. In a subsequent search of his person and the immediate vicinity of his arrest, police found crack cocaine and a handgun.

## II. PROCEDURAL HISTORY

---

[2] Henderson challenges this chronology of events, but as we discuss later, this finding of the District Court is consistent with the testimony offered at the suppression hearing.

On May 28, 2002, a grand jury sitting in the Eastern District of Pennsylvania charged Andrew Henderson with an indictment for possession with intent to distribute in excess of five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) (Count I); possession and carrying of a weapon in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count II); and possession of a weapon by a previously convicted felon, in violation of 18 U.S.C. § 922(g) (Count III). (Appellant Brief at 3.)

Henderson moved to suppress the evidence found following his apprehension. (Appellant App. at 39a.) He argued that he was illegally seized when he was approached by Officer Smith and complied with his request for identification. (Appellant App. at 46a.) He further argued that his subsequent flight, apprehension and discovery of physical evidence were all fruit of the unlawful seizure. (Appellant App. at 49a.) On January 10, 2003 the District Court issued the Findings of Fact and Conclusions of Law and Order (hereinafter "Suppression Mem.") denying the defense motion to suppress the physical evidence.

On July 14, 2003, Henderson entered into a written plea agreement in which he conditionally pled guilty to Counts I and III, while reserving his right to appeal the District Court's suppression ruling. On October 30, 2003, the District Court sentenced Henderson to 121 months imprisonment, eight years of supervised release and a special assessment of $200. Count II was dismissed on a motion of the government. Henderson now appeals the District Court's order, which denied his motion to suppress evidence seized in violation of the Fourth Amendment.

## III. STANDARD OF REVIEW

The District Court had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over the timely appeal pursuant to 28 U.S.C. § 1291. "This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." U.S. v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

The parties confine their arguments to the time immediately before Henderson fled. Additionally, they stipulate that prior to Henderson's flight, Officer Smith did not have a reasonable suspicion sufficient to justify a stop and frisk under the standard outlined in Terry v. Ohio, 392 U.S. 1, 20-22 (1968) and clarified in Florida v. J.L., 529 U.S. 266, 271-72 (2000) (holding that an anonymous tip without any indicia of reliability is insufficient by itself to establish a reasonable suspicion that would justify a Terry stop). The parties also agree that Officer Smith exercised a "show of authority," but they differ as to when this occurred. Therefore we will examine when Officer Smith exercised a show of authority and whether Henderson actually submitted to Officer Smith's show of authority.

## IV. DISCUSSION

The Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . . ." U.S. Const. amend. IV. This protection extends to the unreasonable

5

seizure of persons, California v. Hodari D., 499 U.S. 621, 624 (1991), and "belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs," Terry, 392 U.S. at 8-9. Of course, the Fourth Amendment does not prohibit all seizures, only those that are unreasonable. Id. at 9. Therefore our examination involves two questions: (1) was there a seizure; and, if so, (2) was that seizure unreasonable.

Reserving the initial question, we deal first with the latter part of the inquiry because it can be easily addressed. Investigative stops of the kind at issue here are governed by the rules established by the Supreme Court in Terry v. Ohio, 392 U.S. at 27. In Terry, the Court's held that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). The government conceded that Officer Smith did not have a reasonable suspicion sufficient to justify detaining Henderson when he first approached him. (Appellee Brief at 12.) We find no reason to examine this issue further and assume that if Officer Smith did seize Henderson, he did so unreasonably.

With that in mind, we return to the first question: was Henderson seized? In United States v. Mendenhall, 446 U.S. 544, 553 (1980), the Court explained that "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." Because neither party disputes the District Court's finding that Officer Smith never touched Henderson, (Suppression Mem. at 4), we are

6

concerned only with Officer Smith's show of authority. In <u>California v. Hodari D.</u>, 499 U.S. at 626, the Supreme Court explained that, when not accompanied by a physical touching, a "seizure" requires both a show of authority by the law enforcement officer and submission to that authority by the person seized. Henderson's appeal rests on the contention that he was seized when he handed his identification card to Officer Smith in response to the officer's show of authority. (Appellant Brief at 18.)

Both parties agree that Officer Smith exercised a show of authority, but they differ on the crucial question of when this occurred. In its analysis of the totality of the circumstances, The District Court concluded that Officer Smith exercised a show of authority when he informed Henderson that he intended to search him for weapons. (Suppression Mem. at 10.) The District Court also found that this did not occur until after Henderson handed Officer Smith his identification card. (Suppression Mem. at 3.)

Henderson argues that the District Court's factual findings on this point were erroneous. We review the factual findings in a District Court's denial of a motion to suppress for clear error. <u>U.S. v. Perez</u>, 280 F.3d 318, 336 (3d Cir. 2002). In view of the record, we cannot say that the District Court's resolution of the testimony amounted to clear error. The record, in multiple places, supports the District Court's finding that Officer Smith announced his intention to pat-down Henderson only after Henderson had provided his identification card and not, as Henderson maintains, as soon as Officer

7

Smith approached him.[3]  We agree with the government that Henderson is relying on "an

ambiguous cross-examination" to support his claims of factual error.  (Appellee Brief at

13, n.1.)[4]

---

[3] Henderson would have us find that the District Court's chronology of events is wrong and that Officer Smith announced he was going to pat Henderson down as soon as he approached him.  To support this assertion, Henderson points to one instance in which Officer Smith answers a lengthy, compound question on cross-examination in the following manner:

Counsel:   So that was your intention when you approached him, right?
Smith:     No, it was my intention to investigate a suspicious persons complaint.
Counsel:   Well – so how were you planning on doing that when you walked – the first thing you said when you walked up to him, was it not, Officer, was that, sir, I received a radio call of a man with an orange shirt, carrying a gun, you have an orange shirt on, I'm going to have to pat you down; isn't that the first thing you said to him when you came upon him?
Smith:     Correct, and that was for my safety and I also want to identify the subject.

(Mot. to Suppress Hr'g Tr. at 27).  However, Officer Smith's testimony throughout the rest of his examination is consistent with the Court's finding.  On direct examination, Officer Smith states: "And I exited the vehicle and approached the subject wearing the orange shirt and advised him that I was investigating a suspicious person complaint and asked him if he had any identification. . . . [H]e gave me his identification card. . . .  I then asked him, for my safety, if I could pat him down for weapons, at which time he said you don't need to pat me down, I don't have nothing and became evasive and started walking away from me."  (Id. at 9-10).  On cross-examination he stated, "He handed me his identification card first and I then asked him if I could pat him down for my safety."  (Id. at 30).  Later in the testimony he said, "After he handed me his identification card, I advised him I wanted to do a Terry stop for weapons."  (Id.).  This testimony is consistent with the District Court's findings, including the statement in its Conclusions of Law that the officer told Henderson he intended to frisk him before Henderson fled.  (Conclusions of Law at 10).

[4] In its brief, the government argued that Henderson's contact was only momentary and was therefore permissible under United Stated v. Valentine, 232 F.3d 350, 359 (3d Cir. 2000).  (Appellee Brief at 14-15.)  The government also stated that it "does not press the issue" and that Henderson's claim of factual error is "immaterial."  (Id. at 13, n.1.)  However, in the next sentence the government argues that Henderson's claim of factual error is based upon "ambiguous cross-examination," (Id. at 13, n.1.), and the government's statement of the facts in its brief adhered to the District Court's findings, (Id. at 6).  In addition, the government stated in its brief that it, "further does not challenge the district court's determination that Officer Smith made a show of authority, stating to Henderson that he intended to search him."  (Id. at 12-13.)

We find that the government was attempting to argue that if the contact was only momentary, under Valentine the factual issue would not have to be resolved.  Similarly at oral argument, the government indicated that if the contact was momentary it would not matter when the show of authority was made.  In doing so however, it never conceded to Henderson's claim

The distinction is critical. Until Officer Smith announced that he was going to conduct a pat-down, the encounter was permissible. Police do not violate the Fourth Amendment by merely approaching an individual and asking him questions. Florida v. Royer, 460 U.S. 491, 497 (1983). Nor is it impermissible for police to ask someone for identification. Id. at 502. "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justifications." Mendenhall, 446 U.S. at 554. Although he was in uniform and kept a hand on a holstered gun, Officer Smith did not initially call out or command Henderson, attempt to touch him, tell him that he would detain him, or tell him that he was not free to go. This falls far short of a "show of authority" that would cause a reasonable person to believe that he was not free to leave. See id. at 554 (suggesting that a reasonable person would not feel free to leave when he or she is confronted with "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled"). Therefore, Henderson's act of providing his identification was the product of a consensual encounter, not an impermissible stop resulting from a coercive seizure.

---

of factual error. We need not address whether the contact was as brief as in Valentine because we agree with the District Court that there was no show of authority until Officer Smith stated his intention to search Henderson.

It is not unusual for a show of authority to be preceded by an initially consensual encounter. In Florida v. Royer, 460 U.S. 491, 501-02 (1983), the Court examined a similar encounter which began permissibly when police asked to see Royer's ticket and driver's license, but escalated to a "show of official authority" when those officers identified themselves as narcotics agents, told him that they suspected he was carrying illegal drugs and, while retaining his ticket and identification, asked him to accompany them to the police room. Henderson's case differs in that, when the police action eventually did rise to a show of authority, Henderson did not cooperate. Prior to that Henderson never indicated verbally or otherwise that he did not want to identify himself or speak with Officer Smith.

Our decision in U.S. v. Coggins, 986 F.2d 651, 654 (3d Cir. 1993), also supports our decision. In Coggins, a police officer and a drug enforcement agent approached the defendant, Patrick Coggins, and four traveling companions while they sat waiting for a flight. Id. at 652. The officers asked to see the travelers' identifications and plane tickets and Coggins told them that he did not have any identification with him and that another man in the group was holding his ticket. Id. While the agent was questioning this other man, Coggins stood up and stated that he needed to go to the bathroom. Id. The agent told Coggins to sit down and he complied. A short time later, Coggins again stood up and said he needed to go to the bathroom immediately. Id. The agent again told him to sit down, but Coggins walked away, then broke into a sprint and proceeded to discard small bags which were later determined to be filled with crack cocaine. Id. at 652-53. This

10

Court determined that Coggins yielded to the officer's authority when he was told to sit back down and he complied. "[T]he combination of Coggins' expressed desire to leave, Agent Inouye's order that he stay, and Coggins' yielding to police authority resulted in a seizure for purposes of the Fourth Amendment." Id. at 654. It is important to note, however, that the seizure did not occur until Coggins asked to leave and was told to sit down. Until that point, there was no exercise of authority, and the encounter was consensual.

Once Henderson expressed that he did not want to submit to a pat down, Officer Smith would have acted improperly had he detained Henderson. However, Henderson never gave him the opportunity. Unlike Coggins who complied when officers told him to sit down, once Henderson made it known that he did not want to be frisked, he never again cooperated with Officer Smith. He refused to submit to the pat down and stepped away. Before Officer Smith had the opportunity to detain him or frisk him, Henderson fled. Because he did not submit to Officer Smith's show of authority, this Court cannot find that Henderson was seized in violation of the Fourth Amendment. See California v. Hodari D., 499 U.S. 621, 629 (1991). Therefore, we affirm the decision of the District Court denying the motion to suppress.