*738 FISHER, Circuit Judge,
concurring in part and concurring in the judgment.
Judge Hardiman has persuasively explained why the government is foreclosed from pursuing most of its arguments on appeal, and I join his opinion in most respects. I write separately to clarify why I would not enforce the waiver doctrine against the government with respect to its reliance on California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), but would nevertheless affirm the District Court’s suppression order both because the government has failed to satisfy its burden of proof and because the government’s reliance on Hodari D. is misplaced.
The basic facts of this case are straightforward enough. Officers Mabry and Shippen were on the lookout for a suspect in a shooting, spotted Dupree in the vicinity, and thought he matched the suspect’s description. Officer Mabry approached Dupree and grabbed him. Dupree almost immediately broke free, gave chase, and moments later threw a gun into a flowerpot while still on the run. Although the government persisted in telling the District Court otherwise, it now wisely concedes that Officer Mabry’s act of grabbing Dupree, no matter how short in duration, effected a seizure within the meaning of the Fourth Amendment. See United States v. Brown, 448 F.3d 239, 245 (3d Cir.2006) (seizure may occur with “a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful” (quoting Hodari D., 499 U.S. at 626, 111 S.Ct. 1547)) (quotation marks omitted); see also id. (“seizure is effected by even ‘the slightest application of physical force’ ” (quoting Hodari D., 499 U.S. at 625-26, 111 S.Ct. 1547)). And as the government likewise acknowledges, because that seizure was unsupported by reasonable suspicion, much less probable cause, it was unlawful. See Illinois v. Wardlow, 528 U.S. 119, 123-24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); see also, e.g., Brown, 448 F.3d at 246-52; United States v. Ubiles, 224 F.3d 213 (3d Cir.2000); United States v. Baker, 221 F.3d 438 (3d Cir.2000).
It is axiomatic that evidence obtained as a result of a Fourth Amendment violation ordinarily must be suppressed as “fruit of the poisonous tree.” See Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); see also United States v. Johnson, 592 F.3d 442, 447 (3d Cir.2010); United States v. Mosley, 454 F.3d 249, 254 (3d Cir.2006). That axiom is not absolute; although evidence obtained as a result of a Fourth Amendment violation may be subject to the exclusionary rule as a general matter, the Supreme Court has carved out several exceptions to that rule. See United States v. Pelullo, 173 F.3d 131, 136 (3d Cir.1999); see also Mosley, 454 F.3d at 269; United States v. Goodrich, 450 F.3d 552, 557 (3d Cir.2006). These exceptions reflect the Court’s disavowal of a wooden test for determining whether there exists a causal connection between unlawful police conduct and the recovery of incriminating evidence. See, e.g., Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Instead, the Court has taught that “the scope of the exclusionary rule is determined by ‘whether, granting establishment of the primary illegality, the evidence to which objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.’ ” United States v. Burton, 288 F.3d 91, 99 (3d Cir.2002) (quoting Wong Sun, 371 U.S. at 488, 83 S.Ct. 407) (ellipsis omitted); see also United States v. Perez, 280 F.3d 318, 338 (3d Cir.2002) (“[Evidence is not to be excluded if .the connec *739 tion between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint.” (quoting Segura v. United States, 468 U.S. 796, 797, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984)) (quotation marks omitted)); Pelullo, 173 F.3d at 136. To determine whether the taint of the initial illegality has been purged, the Supreme Court has instructed us to focus on three non-dispositive factors: (1) the temporal proximity between the unlawful conduct and the recovery of the evidence; (2) “the presence of intervening circumstances”; and (3) “the purpose and flagrancy” of the unlawfulness. Brown, 422 U.S. at 603-04, 95 S.Ct. 2254; see Burton, 288 F.3d at 99-100; see also, e.g., United States v. Butts, 704 F.2d 701, 704-05 (3d Cir.1983). The government shoulders the burden of establishing that suppression is unwarranted in light of these factors. See Taylor v. Alabama, 457 U.S. 687, 690, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).
In its brief, the government advances a short disquisition on recent Supreme Court case law reenforcing the Court’s practice of suppressing evidence as a “last resort, not [as a] first impulse[.]” Herring v. United States, — U.S.-, 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009) (quoting Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006)). But absent from the government’s brief is any serious attempt to explain why the factors listed above favor its position. Considering that the foundation of the District Court’s suppression order was its determination that the recovery of the gun was a direct product of Dupree’s encounter with the police, one would think the government would have sought to directly impugn that determination in order to win a reversal of that order. The government’s pleadings in this Court reflect almost no effort to that end and fall well short of the mark, as the government has failed to tell us in even circumspect terms how or why the causal connection between Dupree’s concededly unlawful seizure and the recovery of the gun was severed.
Rather than place its arguments within any accepted Fourth Amendment rubric, the government pins its hopes almost entirely on a passage from the Supreme Court’s decision in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690. There, police officers on patrol in a high-crime neighborhood observed several young individuals on the curb flee when they saw the officers’ car. The officers chased the individuals, one of whom, Hodari, tossed aside what turned out to be crack cocaine before being tackled and handcuffed. The question presented was “whether, at the time he dropped the drugs, Hodari had been ‘seized’ within the meaning of the Fourth Amendment.” Id. at 623, 111 S.Ct. 1547 (footnote omitted). The Court posited that although a defendant is “seized” through “the mere grasping or application of physical force[,]” id. at 624, 111 S.Ct. 1547, there is not a “continuing arrest” if the defendant flees or escapes after the initial seizure, id. at 625, 111 S.Ct. 1547. To illustrate, the Court explained hypothetically that if the officer “had laid his hands upon Hodari to arrest him, but Hodari had broken away and had then cast away the cocaine, it would hardly be realistic to say that that disclosure had been made diming the course of an arrest.” Id. (emphasis added and citation omitted). The Court framed the “narrow question” presented as “whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield.” Id. at 626, 111 S.Ct. 1547. The Court answered that question in the negative. See id. The Court reasoned that public policy supported its conclusion because “[sjtreet pursuits always place the public at some risk, and compliance with police orders to stop *740 should therefore be encouraged.” Id. at 627, 111 S.Ct. 1547. “In sum,” the Court wrote, “assuming that [the officerj’s pursuit in the present case constituted a ‘show of authority’ enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure[.]” Id. at 629, 111 S.Ct. 1547.
Judge Hardiman concludes that the government has forfeited its right to rely on Hodari D. by virtue of its concession on appeal that Dupree, unlike Hodari, was seized at the outset of his encounter with the police. That conclusion is not without some force. The government undoubtedly could have been more articulate, not to mention consistent, in these proceedings, and there is no doubt that the government’s argument before the District Court does not mirror the one it presses on appeal. But legal arguments and pleadings need not be literary gems, and this case is not one in which the government is seeking to introduce into the record on appeal a factual circumstance it never developed in the District Court or is pursuing a legal theory it wholly failed to raise in the District Court. Cf. United States v. Lockett, 406 F.3d 207, 212 (3d Cir.2005); United States v. Martinez-Hidalgo, 993 F.2d 1052, 1057-58 (3d Cir.1993); United States v. Frank, 864 F.2d 992, 1006 (3d Cir.1988). The overarching question throughout these proceedings has been whether the Fourth Amendment’s protections reached Dupree at the pivotal moment at which he discarded the gun. In my view, the government adequately brought that question to the District Court’s attention notwithstanding its erroneous assertion before that court that Dupree was never seized. And importantly, the District Court ruled on that very question, concluding that “Dupree was seized notwithstanding the fact that he subsequently broke free of Officer Mabry’s two-handed grip,” and that “[t]he unlawful seizure of Dupree precipitated Dupree’s flight, Officer Mabry’s and Officer Ship-pen’s pursuit ..., and the forced abandonment by Dupree of the firearm.... ” (App. 62-63.) Under these circumstances, I am not convinced that we should enforce the waiver doctrine against the government to the extent it relies on Hodari D. to make its case. See Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir.2005) (“The crucial question regarding waiver is whether [the plaintiff] presented the argument with sufficient specificity to alert the district court[.]” (quotation marks, other alteration and citation omitted)). I nevertheless agree with Judge Hardiman that affirmance is in order because, even if the government may invoke Hodari D. on appeal, that case does not carry the day for the government.
The passage in Hodari D. (italicized above) on which the government relies is dicta. The government fleetingly—and unconvincingly—disputes that characterization, but dicta it surely is. Dicta are “judicial comments] made while delivering a judicial opinion, but one[s] that [are] unnecessary to the decision in the case and therefore not precedential.... ” Black’s Law Dictionary 1177 (9th ed. 2009); see also Connecticut v. Doehr, 501 U.S. 1, 30, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (Rehnquist, C.J., concurring) (dicta are discussions of “abstract and hypothetical ' situations not before [the court]” (emphasis added)). The question in Hodari D. was whether the suppression of Hodari’s drugs was proper where Hodari was never seized before abandoning them. The absence of a seizure at any point was a key factual component driving the Court’s analysis and underpinning its conclusion that the Fourth Amendment was not implicated. The Court’s speculation on how it might have ruled had Hodari been seized and then terminated the seizure on his *741 own initiative—in other words, a factual circumstance other than the precise one presented—falls comfortably within the quintessential definition of dicta. See State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 92 (3d Cir.2009) (defining dicta as “statements of law in the opinion which could not logically be a major premise of the selected facts of the decision” (quotation marks, alteration, and citation omitted)); see also, e.g., IMO Indus. v. Kiekert AG, 155 F.3d 254, 261 n. 4 (3d Cir.1998). As such, it does not bind this Court. See N.J. Media Group v. Ashcroft, 308 F.3d 198, 201 (3d Cir.2002); Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp., 959 F.2d 468, 495 n. 41 (3d Cir.1992) (en banc).
To be sure, Supreme Court dicta, even while nonbinding, are still highly persuasive. See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 561 (3d Cir.2003); In re McDonald, 205 F.3d 606, 612-13 (3d Cir.2000). Nevertheless, this Court gives dicta as much weight as it sees fit under the circumstances of a particular case. See, e.g., Galli v. N.J. Meadowlands Comm’n, 490 F.3d 265, 274 (3d Cir.2007). For two primary reasons, I do not believe that we should, or even can, elevate Hodari D.’s dicta into controlling authority in deciding this case, as the government in effect requests and as our dissenting colleague evidently believes we should do.
First, the government has cited precious few federal cases that accord with its understanding of Hodari D.[1] A shortage of cases from other courts embracing that understanding does not, of course, preclude us from charting new territory. That said, it seems to me that we should proceed with great caution before ascribing especial significance to dicta from a case that, despite approximately twenty years on the books, has almost never occasioned the result the government urges here, at least as far as both my research and the government’s brief reflect. A cautious approach is all the more appropriate given what I perceive to be a manifest tension between the government’s reading of Hodari D. and other strains of Fourth Amendment jurisprudence.
Second, and maybe even more important, the government’s interpretation of Hodari D. runs practically headlong into this Court’s precedents. In United States v. Coggins, 986 F.2d 651 (3d Cir.1993), Coggins took a flight from St. Thomas to St. Croix, U.S. Virgin Islands. Unbeknownst to Coggins, a Drug Enforcement Administration agent also onboard recognized Coggins as a drug trafficker. Later that night, as Coggins was waiting for a return flight to St. Thomas, the agent approached and began questioning Coggins and his traveling companions. When Cog-gins stood up and said he needed to go to the bathroom, the agent told him to sit back down. Coggins at first complied but soon thereafter ran away, throwing plastic bags from his pockets while the agent chased him. Coggins was arrested and the bags were discovered to contain crack cocaine. Coggins was convicted of a drug offense and appealed. The main issue before this Court was whether Coggins was unlawfully seized when the agent was questioning him. As we explained, “If Coggins was unlawfully seized, the district *742 eoui't should have suppressed the evidence of the crack cocaine that Coggins discarded while fleeing with [the agent] in hot pursuit.” Id. at 653. We held that Cog-gins was seized by the agent within the meaning of the Fourth Amendment because he had submitted to the agent’s show of authority by sitting down after having asked for permission to go to the bathroom. Id. We rejected the government’s reliance on Hodari D. to show that Coggins was no longer seized after he had run away. Id. at 653-54. We distinguished Hodari D. on the ground that while Coggins initially yielded to the agent’s authority, Hodari never did so at any time.[2] Id. at 654.
Coggins and this case are separated by several degrees in pure factual terms, but they are analytically indistinguishable as far as Hodañ D. is concerned. In both cases, the defendants were seized, Dupree via the application of physical force and Coggins via his submission to the agent’s show of authority. In both cases, the defendants unilaterally terminated the seizure, Dupree by breaking free from Officer Mabry’s grip and Coggins by no longer submitting to the agent’s command. And in Coggins, as here, the government argued that that unilateral act on the defendant’s part removed the case from the Fourth Amendment’s purview based on Hodari D.’s dicta. We rejected that argument in Coggins. In my view, the same conclusion must obtain here.
Like our dissenting colleague, I certainly see the logical allure of the government’s position. A superficial study of the facts of this case might well lead one to question why a court would permit a criminal suspect to reap the exclusionary rule’s benefits when he flees from law enforcement, even if he was seized unlawfully. Add to the mix Hodari D.’s musings on whether such a suspect is in fact still seized for Fourth Amendment purposes while in flight, and the answer to that question seems plain: the court should permit no such thing. The critical problem with that framework and the result it yields is that it both completely sidesteps the more sophisticated inquiry our Fourth Amendment jurisprudence mandates and effectively relieves the government of its burden on a suppression motion.
There may come a day when the Supreme Court extends the principle it articulated hypothetically in Hodari D. Significantly, that day has not yet come. Until it does, I am convinced that the police officers in this case recovered the gun in violation of Dupree’s Fourth Amendment rights and, moreover, that the government has not shouldered its burden of proving why the gun should not be suppressed as a consequence of that violation. See, e.g., Mosley, 454 F.3d at 269.
In sum, I would hold that the government loses this appeal both because it has not met its burden of demonstrating the constitutionality of the recovery of the gun and because its novel reliance on Hodari D., while not foreclosed, is unavailing. Accordingly, while I concur in Judge Hardiman’s opinion in most respects, I would also affirm the District Court’s suppression order for the foregoing reasons.

. The cases the government spotlights do it little good. United States v. Williams, 608 F.Supp.2d 325 (E.D.N.Y.2008), may be the government's best hope, but it in no way binds our Court. And in any event, I find both its reasoning and its result unpersuasive as applied here. Passages from United States v. Sprinkle, 106 F.3d 613 (4th Cir.1997), arguably serve the government's cause in the abstract, but importantly, that case makes no mention of Hodari D. The same goes for United States v. Dawdy, 46 F.3d 1427 (8th Cir.1995).

. We did not vacate Coggins’ conviction, however, because we found that reasonable suspicion supported the seizure. As noted, there is no dispute here that the officers’ seizure of Dupree was not supported by reasonable suspicion and hence was unlawful.