NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3771
_____

UNITED STATES OF AMERICA

v.

HIKEEM TORRENCE,
a/k/a HAK

Hikeem Torrence,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 10-cr-00620-13)
District Judge:  Hon. Lawrence F. Stengel
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 24, 2015

Before:  CHAGARES, JORDAN, and BARRY, *Circuit Judges*.

(Filed: May 11, 2015)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Hikeem Torrence appeals his conviction and sentence in the United States District Court for the Eastern District of Pennsylvania based on his participation in a large-scale drug-trafficking enterprise known as the "Harlem Boys" that operated in the Bartram Village Housing Development ("Bartram Village") in Philadelphia. On appeal, he raises three grounds of alleged error. For the following reasons, we will affirm.

## I.      Background

The pertinent factual background surrounding the Harlem Boys drug-trafficking operation is set forth more fully in the opinion addressing the appeal of co-conspirator Ramel Moten. *See United States v. Moten*, No. 13-3801, Slip Op. at 2-5 (3d Cir. May 11, 2015). We provide here only the facts relevant to Torrence's appeal.

Torrence was named along with nineteen other defendants in an eighty-nine count superseding indictment. Specifically, he was charged with conspiracy to participate in a racketeering enterprise (count 1), in violation of 18 U.S.C. § 1962(d); conspiracy to distribute 280 grams of cocaine base (crack) and marijuana (count 2), in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; possession with intent to distribute cocaine base (crack) (count 75), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); assault with a deadly weapon in aid of racketeering, and aiding and abetting (count 82), in violation of 18 U.S.C. § 1959(a)(4); carrying and using a firearm during a crime of violence, and aiding and abetting (counts 83, 85, and 87), in violation of 18 U.S.C. § 924(c); attempted murder in aid of racketeering, and aiding and abetting (count 84), in violation of 18 U.S.C.

§ 1959(a)(5); and assault with a deadly weapon in aid of racketeering, and aiding and abetting (count 86), in violation of 18 U.S.C. § 1959(a)(3).

Torrence was acquitted of one of the counts of assault with a deadly weapon and of the accompanying firearm charge (counts 86 and 87), but was convicted on all other counts in which he was named. The District Court sentenced him to 564 months' imprisonment and five years' supervised release and imposed various fines and special assessments.

## II. Discussion[1]

Torrence raises three issues on appeal: (1) whether the District Court erred in refusing to suppress evidence obtained during an allegedly invalid *Terry* stop; (2) whether the District Court erred in denying his motion *in limine* to exclude testimony that he was arrested while police were responding to a report of a person with a gun; and (3) whether the District Court erred in denying his motion *in limine* to exclude recorded conversations between a confidential informant and Moten. None of his arguments is persuasive.[2]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] In his statement of the issues, Torrence lists three issues for appeal that are different from the three issues he actually discusses in his brief and that do not appear to be in relation to this case. We assume that this was merely a clerical mistake but, insofar as it was not, those three issues are waived. *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005), *as amended* (Mar. 8, 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); *see also* Fed. R. App. P. 28(a)(8).

## A.     Suppression of Evidence[3]

On June 2, 2010, Philadelphia police officers responded to a radio call reporting a "person with a gun" at 5405 Bartram Drive. (Supp. App. at 416.) Upon arrival, the officers located spent shell casings on the steps of that address. After a bystander told police that the gunman ran into one of the apartments at 5401 Harley Terrace, the officers began knocking on doors there. When police knocked on the door of Apartment 3B, Torrence came "bolting" out of that apartment – almost knocking an officer to the ground. (Supp. App. at 379.) As one of the officers struggled to detain Torrence, Torrence open his clenched hand and dropped a small item onto the windowsill. The other officer recovered the item, which was a bag containing several small packets of crack cocaine.

Torrence claims that the evidence should have been suppressed because the stop was without reasonable suspicion or probable cause. We disagree. The officers had reasonable suspicion to detain Torrence when, in response to the police knocking on the door and announcing their presence, he ran out of the apartment where a gunman was reported to be. *See Illinois v. Wardlow*, 528 U.S. 119, 123, 124 (2000) ("[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. ... [N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." (internal

---

[3] We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review of its application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

quotation marks omitted)); *Cf. United States v. Valentine*, 232 F.3d 350, 357 (3d Cir. 2000) ("[W]e conclude that the officers had reasonable suspicion [to detain and frisk the defendant] after they received the face-to-face tip, were in a high-crime area at 1:00 a.m., and saw [the defendant] and his two companions walk away as soon as they noticed the police car."). Accordingly, Torrence's detention was a valid *Terry* stop and, because they were responding to a radio call of a person with a gun, the officers had sufficient cause to believe Torrence was armed and dangerous and were thus permitted to conduct a limited search of his person for weapons. *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (holding that an officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual"). The seizure of the crack cocaine, whether obtained as a result of Torrence's abandonment or a constitutionally permissible pat-down conducted pursuant to a valid *Terry* stop, was thus reasonable and the District Court did not err in denying Torrence's motion to suppress. *See Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (police officers may seize nonthreatening contraband detected during a protective pat-down search of the sort permitted by *Terry*); *United States v. Coggins*, 986 F.2d 651, 652, 654-55 (3d Cir. 1993) (crack cocaine that defendant abandoned while in flight from the DEA agent was properly admitted during valid *Terry* stop).

## B.     Introduction of Evidence of Prior Shooting[4]

Torrence also complains that, in explaining why the police officers stopped him during the June 2, 2010 incident, the jury was allowed to hear that the officers were responding to a radio call for a shooting.  He argues that he was not charged with gun possession, nor was it listed as an overt act in the conspiracy, and therefore admitting that testimony was unduly prejudicial.  Again, we disagree.

As Torrence acknowledges, the jury was told that the police were responding to a radio call for a shooting to explain why they were present in Bartram Village on the night in question.  The evidence that the police were responding to a radio call was relevant to provide context to the jury and was, at most, prejudicial in that it showed that Torrence was present in an area where crime and gun violence were common.[5]  We cannot say that the danger of unfair prejudice substantially outweighed the contextual relevance of the evidence.  Fed. R. Evid. 403.

---

[4] We review the District Court's evidentiary ruling for an abuse of discretion. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003).

[5] The District Court's opinion and the government's brief tend to focus on whether it was permissible for the government to introduce evidence through the testimony of cooperating co-conspirators that, in furtherance of the RICO enterprise, Torrence actually did shoot a rival drug dealer on June 2.  Torrence's argument on this point, however, is not as to that testimony, but is limited to the police testimony regarding their June 2 stop. Nonetheless, as we discuss below, evidence that Torrence shot a rival drug dealer was relevant to the charged RICO offenses.

### C. Introduction of Recorded Conversations Between Co-Conspirators[6]

Finally, Torrence argues that the District Court should have excluded two recorded conversations between Moten and a confidential informant that reference "Hak" – Torrence's alias – shooting a rival drug dealer on June 2. Torrence contends that the conversations were irrelevant, hearsay, and unduly prejudicial.[7]

First, evidence from co-conspirators that Torrence actually shot at a competing drug dealer – ultimately missing his intended target – was direct evidence of his participation in the Harlem Boys' enterprise and was thus intrinsic to the charged offenses. *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010) (evidence of uncharged misconduct is admissible if it "directly proves" the charged offense or if the misconduct was contemporaneous with the charged crime and facilitated its commission). Second, the recording was not hearsay because it was plainly a statement made by a co-conspirator during and in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E).

---

[6] As we have noted, we review the District Court's evidentiary ruling for an abuse of discretion. *Brennan*, 326 F.3d at 182.

[7] One of the conversations that Torrence complains about is the following exchange:

> Moten: I don't know what you heard but I just need my bread. This shit crazy. It's all Hak's fault.
> Confidential Informant: It's Hak's fault? Oh, he done put him on a mission.

(Torrence App. at 700; App. at 5114.) This largely incomprehensible exchange falls in the middle of a larger discussion about how one of the Harlem Boys obtained a gun that he used during a robbery. Torrence is mentioned by his alias in passing during that discussion and his attorney immediately made that point clear during cross examination, when he prompted the agent to explain that Torrence had nothing to do with either the gun or the robbery. Accordingly, this conversation was not prejudicial to Torrence and was relevant to the purpose for which it was admitted.

Finally, even though the testimony as to the uncharged misconduct is prejudicial, its probative value is not substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

## III.    Conclusion

For the foregoing reasons, we will affirm the rulings of the District Court.