

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-2009

# USA v. Christopher Waterman

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2543

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Christopher Waterman" (2009). *2009 Decisions*. Paper 1375.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1375

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2543
_____

UNITED STATES OF AMERICA,

Appellant

v.

CHRISTOPHER WATERMAN,


_____

Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal No.07-cr-00073-1)
District Judge:  Honorable Sue L. Robinson


_____

Argued March 24, 2009

Before:  RENDELL, AMBRO, and JORDAN, Circuit Judges.


(Filed: May 12, 2009)
_____

Shawn A. Weede, Esq.   **[ARGUED]**
Office of United States Attorney
1007 North Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE    19899

*Counsel for Plaintiff-Appellant*
  *United States of America*


Edson A. Bostic, Esq.
Brian Crockett, Esq.   **[ARGUED]**
Fieffa N. Harper, Esq.
Office of Federal Public Defender
704 King Street
First Federal Plaza, Suite 110
Wilmington, DE    19801

*Counsel for Defendant-Appellee*
  *Christopher Waterman*

_____


OPINION OF THE COURT
_____


RENDELL, <u>Circuit Judge</u>.

Although this case presents multiple Fourth Amendment issues – probable cause for an arrest, consent to search, and the admissibility of unwarned inculpatory statements – our inquiry is confined to the sole issue decided by the District Court: whether the defendant was "stopped" under *Terry v. Ohio*, 392 U.S. 1 (1968).

2

The District Court held that police effected a *Terry* stop, that reasonable suspicion for the stop was lacking, and that contraband discovered thereafter must be suppressed. The government urges that the District Court should have determined, based on *California v. Hodari D.,* 499 U.S. 621, 627 (1991), that Waterman was not "seized" within the meaning of the Fourth Amendment. The government raised *Hodari D.* in its opposition to the motion to suppress, but the District Court did not refer to it. We conclude that we are required to reverse the District Court based upon *Hodari D.,* and will remand for further proceedings.

The scene is properly set by the District Court's findings of fact, which are not challenged by the parties on appeal. Officers Nowell and Ashe responded to a dispatcher's report that an anonymous informant had observed a "subject" with a gun at 1009 West Seventh Street in Wilmington, Delaware. The dispatcher did not indicate the tip's reliability. Officers Nowell and Ashe responded to the call in a marked police vehicle. As the pair proceeded down West Seventh Street, they observed the silhouettes of five people standing on the front porch of a house. Turning on a spotlight, Officer Ashe confirmed that the address of the house was 1009, and that two females and three males were on the porch. Waterman was standing in the middle of the group, near the front door to the residence. Getting out of the police cruiser, Officer Ashe positioned herself 8-10 feet from the residence, while Officer Nowell approached the house. Ashe did not observe any weapons but ordered the individuals on the porch to place their hands

3

in the air for safety reasons.  All complied except Waterman, who kept his hands in his jacket pockets.  The District Court found the following events ensued:

> 7.  From her vantage point, Ashe had an unobstructed view of defendant.  Ashe did not see a weapon in defendant's hands; however, based on her training, Ashe suspected that defendant might have been armed because he had moved his hands toward his waistband.  Ashe and Nowell drew their firearms as Ashe repeatedly commanded defendant to put his hands in the air.  Defendant did not comply; he moved one of his hands behind his back and turned the doorknob of the front door.  The door didn't open.  Ashe thought the door was locked.  Ashe continued, unsuccessfully, to order defendant to show his hands.   Ashe and Nowell maintained their weapons in a drawn position, aimed at the individuals standing on the porch.

> 8.  Just then, Deborah Waters opened the door and stepped onto the porch.  As Deborah Waters exited, defendant entered the residence.  Nowell, standing near the porch, thrust his leg into the doorway to prevent the door from being shut.

A. 7 (internal citations omitted).

The District Court concluded that Waterman was effectively "stopped" when Officer Ashe commanded everyone on the porch to put their hands in the air.  Hence, what transpired next – Waterman's "failure to follow Ashe's command," the officers' "drawing their weapons," and Waterman's "suspected conduct in the residence" – could not "cure this initial unconstitutional violation." A. 16.  Based solely on the unlawful "seizure" on the porch, the Court suppressed a gun and drugs subsequently discovered in the residence.

In *Hodari D.*, the Supreme Court held that an arrest "requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority."  499 U.S. at 626

(emphasis in original).   The Court explained that the concept of physical force necessary

for a "seizure" does not consist merely of the show of authority,[1] but, rather, requires the

application of force or "laying on of hands."[2]

With respect to "submission," the Court noted that compliance with police orders

to stop should be encouraged.   This would seem to require something more than a

momentary pause or inaction.[3] The Court did not differentiate between an "arrest" and a

---

[1] For example, the Supreme Court explained that a police command to "Stop, in the name of the law!" – unaccompanied by physical contact with the suspect – does not constitute a "seizure." *Hodari*, 499 U.S. at 626.

[2] *Hodari D.* suggests that touching is required – "[t]here can be no arrest without either touching or submission" – but at least one other court has found it not to be "explicit." *See Hodari D.*, 499 U.S. at 626-27; *United States v. Holloway,* 962 F.2d 451, 456 (5th Cir. 1992).  We need not decide whether contact is necessary in every instance to effect a "seizure," as we conclude that the police conduct here did not involve physical force or its functional equivalent.

[3] Although *Hodari D.* involved a suspect engaged in headlong flight, we have since examined acts of defiance that are less overt.  Our precedents suggest that "submission" under *Hodari D.* requires, at minimum, that a suspect manifest compliance with police orders. *See, e.g.*, *Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006) (identifying as dispositive whether the suspect "manifests" a belief that he has not been seized (quoting *United States v. Smith*, 423 F.3d 25, 31 (1st Cir. 2005))); *United States v. Hernandez,* 27 F.3d 1403, 1406-1407 (9th Cir. 1994) (no "submission" to police authority when suspect, instructed by officer to "stop right there," pauses momentarily and makes eye contact with the officer but flees thereafter); *see also United States v. Valentine*, 232 F.3d 350, 358-59 (3d Cir. 2000) (citing *United States v. Johnson*, 232 F.3d 1313, 1315 (D.C. Cir. 2000)) (no submission to police authority when defendant disobeys police order to raise his hands); *United States v. Coggins,* 986 F.2d 651, 654 (3d Cir. 1993) (suspect submits to police authority when he obeys officer's command to sit down).  On the other hand, a "stop" is effected when police wear down an uncooperative suspect by making clear the need for compliance*. Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003).

*Terry* stop, and we have universally looked to the requirements set forth in *Hodari D.* to determine whether a police encounter with a citizen constitutes a "seizure" within the meaning of the Fourth Amendment.[4]

Here, there was no application of physical force. The police drew their guns in a "show of authority." While this act definitely constituted a display of force, we conclude that it fell short of the force or physical contact required under *Hodari D.*[5]

Similarly, there was no "submission" by Waterman. While the others on the porch raised their hands in compliance with the officers' directive, Waterman failed to do so. Instead, he moved his hands toward his waistband, and ultimately retreated into the house.

It will be of little comfort to Waterman that we agree with the District Court that, had police effected a "seizure" on the porch, Waterman's rights would have been violated

---

[4] *See, e.g.*, *United States v. Brown*, 448 F.3d 239, 245-46 (3d Cir. 2006); *Valentine*, 232 F.3d at 358; *Coggins*, 986 F.2d at 653-54. Whether the police action authorized by Hodari D. represents something distinct from the traditional "Terry stop" is not a question we need confront in this case. *See Hodari D.*, 499 U.S. at 626 (Stevens, J. dissenting). We need note only that, after *Hodari D.*, the attributes of a "stop" as set forth therein must be present in order for the Fourth Amendment to be implicated.

[5] *Couden*, 446 F.3d at 493-94 (no "seizure" when defendant flees after police draw their weapons); *Valentine*, 232 F.3d at 358-59 (citing *Johnson*, 232 F.3d at 1315 for the proposition that no "seizure" occurs when police, drawing their weapons, order a defendant to raise his hands, but he refuses); *Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir. 1995) (no "seizure" when police, rushing the defendant's car with their guns drawn, order him out of the vehicle, but he flees); *Edwards v. Giles*, 51 F.3d 155, 156 (8th Cir. 1995) (no "seizure" when police point gun at defendant, but he refuses to submit to officer's authority).

6

because the anonymous tip did not provide officers with a reasonable suspicion that he was armed. However, the absence of either element required for a "seizure" under *Hodari D.* is fatal.

Accordingly, we will REVERSE the Order of the District Court suppressing the evidence and REMAND for further proceedings.