NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2418
_____

UNITED STATES OF AMERICA,

v.

IRVING RICHARDSON,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cr-463)
District Judge:  Hon. C. Darnell Jones, II
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2012

Before:   SCIRICA, FISHER, and JORDAN, *Circuit Judges*.

(Filed: November 16, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Irving Richardson pleaded guilty in the United States District Court for the Eastern District of Pennsylvania to possession of a loaded firearm by a convicted felon and possession of marijuana.  He now challenges the District Court's order denying his motion to suppress the firearm and marijuana.  For the following reasons, we will affirm.

## I.     Background

On January 24, 2009, Philadelphia Police Officers William Verica and Gerard Murphy were on patrol in a marked vehicle in the 39th Police District in Philadelphia, Pennsylvania. When the officers arrived at the intersection of 21st Street and Allegheny Avenue, they saw a white 1995 Chevrolet Malibu with a defective center-rear brake light. Believing the defective light to be in violation of Pennsylvania's motor vehicle laws, Officer Murphy activated the overhead lights and siren on his vehicle and signaled the Chevrolet to stop.

The Chevrolet stopped at the entrance to the parking lot of a Kentucky Fried Chicken ("KFC") restaurant located on the corner of 22nd Street and Allegheny Avenue. As soon as it came to a stop, the passenger, Irving Richardson, began to get out of the car and said "he was just going to get some chicken." (Supplemental App. at 12.) Officer Verica instructed Richardson to get back in the vehicle and told the driver to park in a parking space. Richardson and the driver complied, and the Chevrolet pulled into a parking space. At that point, Richardson immediately got out of the car and began running southbound on 22nd Street. Verica chased him on foot, while Murphy pursued in the police vehicle, leaving the Chevrolet and its driver in the parking lot.

During the pursuit, Richardson pulled a black revolver from his waistband and pointed it in Verica's direction. Officer Verica immediately took cover behind a parked car and saw Richardson throw the gun on the ground. The chase then continued until they reached the intersection of 22nd and Lippincott Streets, where Richardson put up his hands, dropped a plastic bag containing marijuana to the ground, and said, "You got me."

2

(Supplemental App. at 20 (internal quotation marks omitted).) He also volunteered that there were open arrest warrants against him. After arresting Richardson, Verica recovered the plastic bag containing marijuana and the black revolver. Although, Officers Verica and Murphy radioed for other police officers to go to the KFC parking lot to see if the driver was still at that location, by the time the other officers arrived at the KFC, the car and driver were gone and witnesses said the Chevrolet had fled northbound on 22nd Street. Officer Murphy completed an Investigation Report, in which he noted that the Chevrolet was pulled over because it was traveling with a "defective middle brake light." (*Id*. at 118 (internal quotation marks omitted).) Officer Verica completed an Arrest Memo, in which he indicated that the reason for vehicle stop was a "3303B – mid brake light out."[1]

On July 14, 2009, a two-count Indictment was filed against Richardson: Count One charged him with possession of a loaded firearm by a convicted felon, in violation of 18 U.S.C § 922(g)(1), and Count Two charged him with possession of marijuana, in violation of 21 U.S.C. § 844(a).

On November 20, 2009, Richardson filed a motion to suppress "all evidence stemming from his illegal stop and seizure on January 24, 2009." (J.A. at 20.) The District Court held a hearing and subsequently denied the motion on February 22, 2010. The Court decided that Officers Verica and Murphy carried out a reasonable seizure

---

[1] During the suppression hearing, Verica testified that he intended to write "4303B," which indicates the existence of a defective center-rear brake light. (Supplemental App. at 44.)

3

when they pulled over the Chevrolet for what they believed to be a necessary enforcement of Pennsylvania's Motor Vehicle Code. The Court specifically held that Officer Verica was justified in ordering Richardson to step back in the vehicle.[2] It also found that the officers had a reasonable basis to pursue Richardson when he ignored Verica's instruction and "fled before any information could be obtained in accordance with 75 Pa.C.S.A. § 6308(b)."[3] (*Id.* at 100.) Further, the Court determined that Richardson's act of throwing the firearm and marijuana constituted an uncoerced abandonment. Finally, the Court concluded that the revolver and the marijuana were not "fruit of the poisonous tree." (*Id.* at 101 (internal quotation marks omitted).) Accordingly, the District Court denied Richardson's motion to suppress.

On May 9, 2012, Richardson pleaded guilty to Count One of the Indictment and was sentenced to 100 months' imprisonment, with three years of supervised release.[4] Richardson filed this timely appeal.

---

[2] The District Court stated that an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk. *See Brendlin v. California*, 551 U.S. 249, 258 (2007). Based on that rationale, the Court determined that ordering Richardson to remain in the car was justified.

[3] Pennsylvania's Motor Vehicle Code permits a police officer who has reasonable suspicion that a traffic violation is occurring to stop a vehicle "for the purpose[s] of checking the vehicle's registration … vehicle identification number … or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce [the traffic laws]." 75 Pa. Cons. Stat. Ann. § 6308(b).

[4] Richardson pleaded guilty pursuant to a plea agreement in which the Government agreed to drop Count Two – possession of marijuana – but Richardson reserved his right to appeal the District Court's suppression ruling.

4

## II. Discussion[5]

In challenging the District Court's ruling on his motion to suppress, Richardson first argues that the stop of the Chevrolet for a defective center-rear brake light was illegal. He also argues that, even if the stop had been legal, officers unlawfully seized him during the stop. Therefore, he contends, the fruit of the illegal stop and unlawful seizure – the gun and marijuana – must be suppressed. We address Richardson's arguments in turn.

### A. *Traffic Stop*

Richardson argues that the initial traffic stop of the Chevrolet was illegal because the officers did not, under 75 Pa. Cons. Stat. Ann. § 4303(b), have a valid basis to stop the car for a nonfunctioning center-rear brake light, and, therefore, any evidence recovered as a result of the stop should have been suppressed. We disagree.

An officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop of a person when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). For reasonable suspicion, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citing *United*

---

[5] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. "We review the District Court's denial of a motion to suppress for clear error as to the underlying factual determinations but exercise plenary review over the District Court's application of law to those facts." *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011).

*States v. Sokolow*, 490 U.S. 1, 7 (1989)). Reasonable suspicion requires "some minimal level of objective justification for making a stop." *Sokolow*, 490 U.S. at 7 (internal quotation marks omitted). Police officers may perform investigatory traffic stops based on reasonable suspicion that "an individual has violated the traffic laws." *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006). A traffic stop will be deemed a "reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *Id.* at 398. Thus, an officer's belief that a traffic law has been violated does not have to be factually accurate; it "need only produce facts establishing that she reasonably believed that a violation had taken place." *Id.* If an officer has a mistaken understanding of the law, however, the stop is unreasonable unless the facts support a violation of a different and properly interpreted law. *Id.* at 399.

Section 4303(b) of the Pennsylvania Motor Vehicle Code provides:

> Every vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department. If a vehicle is equipped with a centrally mounted rear stop light, a decal or overlay may be affixed to the centrally mounted rear stop light if the decal or overlay meets all applicable State and Federal regulations.

75 Pa. Cons. Stat. Ann. § 4303(b). That section, Richardson argues, does not require the center-rear brake light to function, and, therefore, the traffic stop was unlawful because it is not a traffic violation to have a nonfunctioning center-rear brake light.

6

Although the Pennsylvania Supreme Court has not addressed that issue,[6] the Pennsylvania Superior Court has said that Pennsylvania law does require a functioning center-rear brake light. In *Commonwealth v. Muhammed*, 992 A.2d 897 (Pa. Super. Ct. 2010), the court held that a nonfunctioning center-rear brake light constituted a violation of the Pennsylvania Motor Vehicle Code and, therefore, was a valid basis for a traffic stop. *Id.* at 903. The court explained that, in addition to § 4303(b), the regulatory provision in 67 Pa. Code § 153.4 gives the lighting specifications for each stop lamp on a vehicle, requiring a stop lamp to light when activated. *Id.* at 902. Moreover, 67 Pa. Code § 175.66 provides the specifications for lighting and electrical systems, and it specifies that stop lamps must be visible during normal daylight hours. *Id.* Considering this combination of statute and regulations, the court concluded that, although a center-rear brake light is not mandatory equipment, if a vehicle does have a center-rear brake light, it must meet the same requirements as other brake lights – that is, it must illuminate upon activation. *Id.* at 903.

We agree with this persuasive authority, and Richardson provides no authority to the contrary. It follows that Officers Verica and Murphy were permitted to pull over the

---

[6] In the event that the state's highest court has not clearly spoken on an issue of state law, courts give "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000). We are mindful that "[t]he opinions of intermediate appellate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

Chevrolet for traveling with an inoperable center-rear brake light.  Thus, the District Court properly rejected Richardson's argument that the traffic stop was illegal.[7]

B.    *Seizure of Defendant*

Richardson next contends that, even if the traffic stop was proper, the District Court erred in not suppressing the gun and marijuana because he was unlawfully seized when Officer Verica instructed him to get back into the car, and his subsequent abandonment of the revolver and marijuana was a product of that unlawful seizure. According to Richardson, the officer's words "were a show of unnecessary authority and Mr. Richardson perceived that he was unable to leave if he wanted."[8]  (Appellant's Br. 11.)  Again, we disagree with Richardson's reasoning.

For there to be a Fourth Amendment violation, there must first be a seizure. *United States v. Valentine*, 232 F.3d 350, 358 (3d Cir. 2000).  A seizure occurs "when the

---

[7] Richardson also argues the officers' failure to issue a citation for violating § 4303(b) demonstrates that they lacked reasonable suspicion to stop the vehicle.  But the fact that the officers did not issue a citation does not alter the fact that they had reasonable suspicion to conduct a lawful stop of the Chevrolet.

Richardson further asserts that the stop was illegal because Officers Verica and Murphy ignored the driver of the Chevrolet, as they were focused on pursuing Richardson and "they neglected to issue a citation because they [were determined to arrest Richardson]."  (Appellant's Br. at 9.)  Even if true, that fact is irrelevant to the legality of the stop.  *See Whren v. United States*, 517 U.S. 806, 813 (1996) (finding that "the constitutional reasonableness" of traffic stop does not turn on "the actual motivations of the individual officers involved").

[8] Richardson also asserts that he was seized for the second time when officers told him to exit the vehicle and sit on the curb.  (*See* Appellant's Br. At 5 ("[D]efendant contends that he did not run until after he had been removed from the Chevy, patted down for weapons, and ordered to sit on the curb.").)  The record contains no evidence to support this new argument, which is not surprising since it is hardly believable that Richardson, who had a revolver in his waistband, managed to conceal that from the officers during a pat down.

8

officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 19 n.16. If physical force is absent, "*submission to the assertion of authority*" is required. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Even if there is a show of authority, "there is no seizure without actual submission." *Brendlin v. California*, 551 U.S. 249, 254 (2007). Further, submission requires "something more than a momentary pause or mere inaction." *United States v. Waterman*, 569 F.3d 144, 146 (3d Cir. 2009).

During a routine traffic stop, police officers "ha[ve] the authority and duty to control the vehicle and its occupants, at least for a brief period of time." *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004.). Once a vehicle has been lawfully stopped, an officer may ask the driver to step out of the vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1997). An officer may also order "passengers to get out of the car pending completion of the [traffic] stop." *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). More to the point here, an officer may order passengers to remain in the car. *See United States v. Moorefield*, 111 F.3d 10, 13 (3d Cir. 1997) ("Just as the Court in *Wilson* found ordering a passenger out of the car to be a minimal intrusion on personal liberty, we find the imposition of having to remain in the car with raised hands equally minimal."). And although, as a general matter, an occupant is seized within the meaning of the Fourth Amendment during a traffic stop, *see Brendlin*, 551 U.S. at 263 (concluding that occupants of car that was pulled over are seized within meaning of Fourth Amendment), that seizure is not illegal if the stop was lawful.

Thus, because the stop of the Chevrolet was lawful, Officer Verica had the authority to order Richardson to remain in the car while the stop was taking place. Yet Officer Verica's lawful attempt to briefly seize Richardson was unsuccessful. Richardson only momentarily complied with Verica's order to remain in the car, and momentary compliance does not amount to submission to a seizure. *See Waterman*, 569 F.3d at 146 (concluding that submission to police order requires "something more than a momentary pause or mere inaction"); *Valentine*, 232 F.3d at 359 (holding that there was no seizure when defendant failed to place his hands on car as instructed, even assuming that he momentarily complied by stopping and giving his name).

Importantly, at the time of Richardson's actual seizure, when officers apprehended him after his flight, he had already abandoned the revolver and marijuana. *United States v. Harrison*, 689 F.3d 301, 307 (3d Cir. 2012) ("In most cases, disclaiming ownership or physically relinquishing the property is sufficient to establish abandonment."). And because Richardson abandoned the revolver and marijuana before the officers seized him, he had no reasonable expectation of privacy in those items. *See Hodari D*, 499 U.S. at 629 (holding that cocaine abandoned by defendant whilst fleeing from police was not fruit of seizure and "motion to exclude evidence of it was properly denied"); *cf. United States v. Fulani*, 368 F.3d 351, 354 (3d Cir. 2004) ("Although a person has a privacy interest in the contents of his personal luggage he forfeits that interest when he abandons his property." (citation omitted)). Accordingly, we conclude that the District Court did not err in denying Richardson's motion to suppress.

**III.    Conclusion**

For the foregoing reasons, we will affirm the District Court's order denying the motion to suppress.