**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

C.A. No. 20-1016
_____

UNITED STATES OF AMERICA,
                              Appellant

v.

IMAN SEARS
_____

On Appeal from the District Court
for the District of New Jersey
(D.C. No. 2-19-cr-00224-001)
Honorable William J. Martini, U.S. District Judge
_____

Argued September 15, 2020

Before: KRAUSE, RESTREPO, and BIBAS, *Circuit Judges*

(Opinion filed:  November 24, 2020)

Mark E. Coyne
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

John F. Romano [*ARGUED*]
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

*Counsel for Appellant*

Anita Aboagye-Agyeman [*ARGUED*]
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07102

Peter M. Carter
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07102

*Counsel for Appellee*

_____

**OPINION**[*]

_____

KRAUSE, *Circuit Judge*.

The District Court granted Defendant-Appellee Iman Sears's motion to suppress evidence. In this appeal, the Government urges us to reverse the District Court's suppression of the evidence seized from Sears on two alternative grounds: (1) that the officers did not seize Sears until he began to flee, at which point they had reasonable suspicion to seize him, or (2) that if the officers did seize Sears before his attempted flight, they had reasonable suspicion at that earlier point in time. For the reasons set forth below, these arguments are unavailing and we will affirm.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

## I.    Discussion

The Fourth Amendment allows police officers to "conduct a brief, investigatory stop" when they have "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). To evaluate the constitutionality of a stop, we first identify the moment when the suspect was seized and then determine whether the officers had reasonable suspicion at that time. *United States v. Lowe*, 791 F.3d 424, 430 (3d Cir. 2015). We address these questions in turn.[1]

### A.    The Moment of Seizure

A seizure occurs once there is either "(a) 'a laying on of hands or application of physical force'" or "(b) submission to 'a show of authority.'" *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). We are concerned here with the second category, and because the Government concedes that the officers made a show of authority when they ran towards Sears and yelled "stop,"[2] App. 5; *see* Appellant's Br. 10, the question before us is whether Sears submitted to that

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 18 U.S.C. § 3731. "[W]e exercise plenary review over the District Court's legal conclusions, and we review the underlying factual findings for clear error." *United States v. Laville*, 480 F.3d 187, 190 (3d Cir. 2007) (citation omitted). We will not reverse those factual findings so long as "the district court's account of the evidence is plausible in light of the record," *Lowe*, 791 F.3d at 427 (quotation marks omitted), and we view the evidence in the light most favorable to the District Court's ruling, "draw[ing] reasonable inferences in [the prevailing party's] favor," *United States v. Clark*, 902 F.3d 404, 409 (3d Cir. 2018) (citation omitted).

[2] There has been a show of authority if "the officer's words and actions would have conveyed . . . to a reasonable person" that he was being ordered to restrict his movements. *Hodari D.*, 499 U.S. at 628 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

3

show of authority, i.e., whether he "manifest[ed] compliance with police orders," *United States v. Waterman*, 569 F.3d 144, 146 n.3 (3d Cir. 2009). This requires more than "momentary compliance," *United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000) (internal quotation marks omitted), but once a suspect has submitted, his submission is not negated just because he later tries to flee, *United States v. Coggins*, 986 F.2d 651, 653–54 (3d Cir. 1993).

Our cases clarify the degree of compliance required. In *Valentine*, the suspect was ordered "to come over and place his hands on the [police] car," 232 F.3d at 353, and we found no submission where he at most "paused for a few moments and gave his name" before taking flight, *id.* at 359. In *Brown*, by contrast, where the suspect was also ordered to place his "hands on the [police] vehicle," we found that he had submitted because he "demonstrated more than 'momentary compliance' with the arresting officers' demands" by "turning to face the police car and placing (or moving to place) his hands on the vehicle," even though he later fled. 448 F.3d at 244, 246 (quoting *Valentine*, 232 F.3d at 359).

The circumstances here more closely resemble *Brown*. The District Court found that the officers ordered Sears to "stop," App. 5, and that Sears "stopped" at the door to his building, App. 5, "elected not to enter" it, App. 7 n.2, "turned around to face the approaching officers," App. 7 n.3, and said a few words to them. These acts are functionally equivalent to "turning to face the police car and placing (or moving to place) [one's] hands on the vehicle." *Brown*, 448 F.3d at 246. For its part, the Government would liken this case to *Valentine*, contending that Sears only "paused" briefly, 232 F.3d at 359, and therefore never "manifest[ed] compliance" with the officers' order, *Waterman*, 569 F.3d at 146 n.3.

4

But we conclude that by stopping at the door and allowing the officers to approach him, Sears, like the suspect in *Brown*, yielded his freedom of movement and materially increased the officers' control over him, thus "demonstrat[ing] more than 'momentary compliance.'" *Brown*, 448 F.3d at 246. The attempted flight that soon followed did not negate that initial submission. *See id.*

Sears was therefore seized when he stopped at the door, turned to face the officers and speak with them, and allowed them to approach. The dispositive question, then, is whether the officers had reasonable suspicion to stop Sears at that time.

## B. Reasonable Suspicion

Reasonable suspicion requires "a reasonable, articulable suspicion that criminal activity is afoot," *United States v. Hester*, 910 F.3d 78, 84 (3d Cir. 2018) (quoting *Wardlow*, 528 U.S. at 123), meaning less than "probable cause" but more than a "hunch," *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968); and citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). To evaluate reasonable suspicion, we consider "the totality of the circumstances," *United States v. Navedo*, 694 F.3d 463, 468 (3d Cir. 2012) (quotation marks omitted), including, as relevant here, (1) a high crime rate in the area, (2) a late hour at night, (3) nervous or evasive behavior by the suspect, and (4) other behavior by the suspect that indicates criminal activity to a police officer's expert eye, *see Brown*, 448 F.3d at 251.

Here, it is uncontested that the incident occurred late at night in a high-crime area. But those two factors, standing alone, are insufficient for reasonable suspicion. *See United States v. Goodrich*, 450 F.3d 552, 561–62 (3d Cir. 2006). This case therefore hinges on

5

whether Sears acted "nervous[ly]" or "evasive[ly]" or behaved in a way that "conform[ed] to [the] officers' specialized knowledge of criminal activity." *Brown*, 448 F.3d at 251 (quotation marks omitted). If he did, then the officers likely had reasonable suspicion, but if he did not, then the officers did not have reasonable suspicion at the moment when they seized him. *Id.*

The District Court found that he did not, and we cannot say on this record that this finding was clearly erroneous. The one officer who testified stated that Sears acted "startled" when he saw the officers and then walked away nervously, making a "very subtle" adjustment to his waistband, which the officer interpreted to mean that Sears had a gun. App. 4. The District Court found the officer's testimony generally credible. After reviewing the videotapes of the officers' approach and the encounter, though, the Court found that "in light of the various obstacles . . . and subtlety of the movement," the officer could not have "observe[d] the reported indicia of suspicious behavior with sufficient reliability." App. 10. Thus, even recognizing that it must defer to the officer's ability "to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person," *United States v. Green*, 897 F.3d 173, 183 (3d Cir. 2018) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)), and that officers are allowed to make reasonable mistakes of fact, *Heien v. North Carolina*, 574 U.S. 54, 61 (2014), the District Court found reasonable suspicion lacking.

Having reviewed the testimony and videotapes, and considering our deferential standard of review, we conclude that "the district court's account of the evidence is plausible in light of the record." *Lowe*, 791 F.3d at 427. And based on that account, at the

6

moment of seizure, the officers had reliably observed little more than Sears walking away from them in a high-crime area at night, which does not rise to the level of reasonable suspicion. *See Valentine*, 232 F.3d at 357 ("Walking away from the police hardly amounts to the headlong flight considered in *Wardlow* and of course would not give rise to reasonable suspicion by itself, even in a high-crime area . . . .").

In sum, the District Court did not err in ruling that Sears was seized without reasonable suspicion.

## II.    Conclusion

For the foregoing reasons, we will affirm the District Court's order granting Sears's motion to suppress.